UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAQUAN SMITH,

        Plaintiff,

                            CASE NO. 06-CV-12794-DT
                            JUDGE PAUL D. BORMAN
                            MAGISTRATE JUDGE PAUL J. KOMIVES

    v.

CHAD HERMANS, WUNDRACH
and CITY OF PONTIAC,

        Defendants.

_____/

**REPORT AND RECOMMENDATION REGARDING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 24)**

*Table of Contents*

I.    **RECOMMENDATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.   **REPORT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    **A.**    **Procedural History** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    **B.**    **Defendants City of Pontiac and Hermans's Dispositive Motion** . . . . . . . . . . . **3**
    **C.**    **Applicable Law** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
    **D.**    **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
          1.    **Plaintiff pleaded guilty to violations of Mich. Comp. Laws §§
                750.479a(4)(a) [second degree fleeing and eluding] and 750.81d(2)**. . . **6**
          2.    **Many of plaintiff's claims against Hermans and the City of Pontiac
                are grounded in the Fourth and Fourteenth Amendments.** . . . . . . . . **12**
          3.    **The parties dispute whether *Heck v. Humphrey* bars the relief plaintiff
                seeks.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
          4.    **Any claim challenging an element of Mich. Comp. Laws §§
                750.479a(4)(a) and/or 750.81d(2) is barred by *Heck*.** . . . . . . . . . . . . **16**
          5.    ***Heck* does not bar all of plaintiff's claims.** . . . . . . . . . . . . . . . . . . **21**

III.  **NOTICE TO PARTIES REGARDING OBJECTIONS** . . . . . . . . . . . . . . . . . . . . . . **35**

I. **RECOMMENDATION:** The Court should grant in part and deny in part defendants' City

of Pontiac and Hermans's motion for summary judgment. Doc. Ent. 24. Specifically, the Court

should grant the motion with respect to plaintiff's Fourth Amendment excessive force claim (Section

II.D.5.a); deny the motion with respect to plaintiff's Fourth Amendment probable cause claim

(Section II.D.5.b); and grant the motion with respect to plaintiff's Fourteenth Amendment equal

protection claim (Section II.D.5.c). This report does not address plaintiff's state law claims, nor

does it address plaintiff's complaint against Wundrach.

II. **REPORT:**

A. **Procedural History**

Smith is currently incarcerated at Kinross Correctional Facility (KCF) in Kincheloe,

Michigan.[1] On June 22, 2006, while incarcerated at the Macomb Correctional Facility (MRF),

Smith ("plaintiff") filed this pro se civil rights complaint against Chad Hermans and Wundrach of

the Pontiac Police Department, as well as the City of Pontiac, in relation to an event which took

place on July 26, 2004. Doc. Ent. 1 at 2 ¶¶ 3-6, 8.[2] Plaintiff alleges (I) misuse of force; (II) unlawful

seizure and detention; (III) attempted murder; (IV) denial of due process and equal protection; and

(V) conspiracy. Doc. Ent. 1 at 3-4 ¶¶ 18-24. Among his claims for relief are a violation of the

Fourth Amendment; a violation of the Eighth Amendment; assault; felonious assault; a violation of

28 U.S.C. §§ 1981 and 1985; and deliberate indifference. Doc. Ent. 1 at 4-5 ¶¶ 25-29.

---

[1]*See* www.michigan.gov/corrections, "Offender Search."

[2]It appears that plaintiff may have attempted to file copies of certain state court transcripts
with his complaint, because, on June 6, 2006, an order was entered in the Oakland County Circuit
Court Case denying a motion for transcripts. *See* www.oakgov.com, "Court Explorer", Case No.
2005-200235-FH.

According to plaintiff, he "suffered severance of family contacts, divorce from his wife, several months of confinement as a parole violator awaiting adjudication of new criminal charges stemming from his efforts to protect himself from harm, and extreme mental and emotional distress resulting from the direct[] actions of defendant Hermans and the collateral effects of his forced responses." Doc. Ent. 1 at 5. Plaintiff seeks compensatory and punitive damages. Doc. Ent. 1 at 6.

Defendants City of Pontiac and Hermans have filed answers to the complaint. Doc. Entries 18 and 21. Judge Borman has referred this case to me to conduct pretrial matters. Doc. Ent. 14.

**B.      Defendants City of Pontiac and Hermans's Dispositive Motion**

Among the motions pending before the Court is **defendants' November 1, 2007, motion for summary judgment. Doc. Ent. 24.** Defendants contend that "[t]he charges to which Plaintiff pled guilty arose directly out of Plaintiff's failure to respond to defendant Hermans' commands and resulted in injury to Defendant Hermans." Doc. Ent. 24 at 3 ¶ 13. Defendants further contend that "[a]ny judgment Plaintiff might theoretically obtain in this matter under the pled theories per 42 U.S.C. § 1983 would by its own nature invalidate the conviction secured by the people of the State of Michigan and therefore, this case is subject to summary judgment pursuant to *Heck v[.] Humphrey*, 51[2] U.S. 477[] (1994)." Doc. Ent. 24 at 3 ¶ 14.

On November 1, 2007, I entered an order requiring any response by plaintiff to be filed by December 10, 2007. Doc. Ent. 26. On April 11, 2008, I entered an order construing plaintiff's motion for temporary stay of proceedings as a motion for extension of time and permitting plaintiff up to and including June 11, 2008, by which to file a response to the November 1, 2007, motion for summary judgment. Doc. Ent. 33.

On May 19, 2008, plaintiff filed a response to defendants' dispositive motion. Doc. Ent. 37.[3] Defendants filed a reply on May 23, 2008. Doc. Ent. 38.

## C.   Applicable Law

Defendants' motion for summary judgment is based only upon the argument that plaintiffs case is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Doc. Ent. 24 at 3 ¶ 14, 5-8, 12-13. This is confirmed in defendants' reply, which states, "the Motion for Summary Judgment presently pending seeks its relief exclusively on the theory presented in the *Heck v[.] Humphrey* doctrine." Doc. Ent. 38 at 2.

In *Heck*, the Supreme Court considered "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983." *Heck*, 512 U.S. at 478. The Court held:

> . . . in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id*. at 486-487 (internal footnote omitted). The Court further explained:

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's

---

[3]In addition to requesting that the Court deny defendants' dispositive motion, plaintiff requests that the Court appoint counsel to assist him. Such a request would be best posed in plaintiff's own motion, where he might address 28 U.S.C. § 1915(e)(1) and *Lavado v. Keohane*, 992 F.2d 601, 605-606 (6th Cir. 1993).

action, even if successful, will *not* demonstrate the invalidity of any outstanding
criminal judgment against the plaintiff, the action should be allowed to proceed,
in the absence of some other bar to the suit.

*Id*. at 487 (internal footnote omitted).

In *Huey v. Stine*, 230 F.3d 226 (6th Cir. 2000) (Mich.), the Sixth Circuit noted that, "[i]n

general, the federal courts hold that Eighth Amendment claims do not run afoul of *Heck* because

the question of the degree of force used by a police or corrections officer is analytically distinct

from the question whether the plaintiff violated the law." *Huey*, 230 F.3d at 330. The Court

concluded that "*Heck* generally does not bar Eighth Amendment claims, but if the claim is

founded solely on an allegation that a corrections officer falsified a misconduct report, then *Heck*

applies." *Huey*, 230 F.3d at 231.

However, the Supreme Court has since stated, "*Heck*'s requirement to resort to state

litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge

that threatens no consequence for his conviction or the duration of his sentence." *Muhammad v.

Close*, 540 U.S. 749, 751 (2004). The Court further noted: "The assumption is that the

incarceration that matters under *Heck* is the incarceration ordered by the original judgment of

conviction, not special disciplinary confinement for infraction of prison rules. This Court has

never followed the speculation in *Preiser v. Rodriguez*, 411 U.S. 475, 499[] (1973),[4] that such a

prisoner subject to 'additional and unconstitutional restraint' might have a habeas claim

independent of § 1983, and the contention is not raised by the State here." *Muhammad*, 540 U.S.

at 751-752 n.1. *See also Fazzi v. Flannery*, No. Civ. 03-104-B-W, 2003 WL 23312719, *5

---

[4]"When a prisoner is put under additional and unconstitutional restraints during his lawful
custody, it is arguable that habeas corpus will lie to remove the restraints making the custody
illegal." *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973).

(D.Me. Feb. 27, 200[4]) (Report and Recommendation),[5] *adopted by* No. Civ. 03-104-B-W,

2004 WL 595097 (D. Me. March 23, 2004).  The Supreme Court criticized as mistaken the idea

that "*Heck* applies categorically to all suits challenging prison disciplinary proceedings[,]" and

explained:

> But these administrative determinations do not as such raise any implication
> about the validity of the underlying conviction, and although they may affect the
> duration of time to be served (by bearing on the award or revocation of good-time
> credits) that is not necessarily so.  The effect of disciplinary proceedings on good-
> time credits is a matter of state law or regulation, and in this case, the Magistrate
> expressly found or assumed that no good-time credits were eliminated by the
> prehearing action Muhammad called in question.  His § 1983 suit challenging this
> action could not therefore be construed as seeking a judgment at odds with his
> conviction or with the State's calculation of time to be served in accordance with
> the underlying sentence.  That is, he raised no claim on which habeas relief could
> have been granted on any recognized theory, with the consequence that *Heck*'s
> favorable termination requirement was inapplicable.

*Muhammad*, 540 U.S. at 754-755.[6]  *See also McMillan v. Fielding*, 136 Fed.Appx. 818, 820 (6th

Cir. 2005) (Tenn.) ("to the extent that his parole was affected, McMillan may not invoke § 1983

to challenge the disciplinary conviction until the conviction is overturned.")

**D.  Analysis**

**1.  Plaintiff pleaded guilty to violations of Mich. Comp. Laws §§ 750.479a(4)(a) [second
degree fleeing and eluding] and 750.81d(2).**

On July 26, 2004, at 6:27 p.m., the Pontiac Police Department was dispatched to

Chamberlain in Pontiac, Michigan.  The incident/prosecution report lists Officer Hermans as the

victim and Jaquan Effron Smith of Mechanic in Pontiac, Michigan, as the suspect.  Doc. Ent. 24-

---

[5]Although this report and recommendation was assigned a 2003 Westlaw citation and is
dated February 27, 2003, it cites a February 25, 2004, Supreme Court decision.  Furthermore, the
order adopting it refers to it as dated February 27, 2004.

[6]*Muhammad* originated in this district.  *See* Case No. 98-CV-10153.

7 at 1. Narrative reports were completed by Hermans (308); Ofc. M. Crampton (508); and D. Miracle (685). Doc. Ent. 24-7 at 2-5. According to the dispatch report, a call from Christine reported that Jacquan Smith was outside with a gun. Doc. Ent. 24-8 at 1. According to Hermans's narrative report, he "was dispatched to 35 Chamberlain on a report of Jaquan Effron Smith sitting outside of 35 Chamberlain in a car with a gun on his lap." Hermans describes how Smith did not heed Hermans's loud verbal commands. Hermans was able to put the truck in park. Smith's truck came to a stop. Hermans "instructed Smith to put his hands in the air and have his palms touch the ceiling of the truck." At one point, Smith "took his right hand down from the ceiling and made a furtive gesture with his right hand in the direction of underneath the driver seat." A struggle ensued, and Smith "took his right hand and placed the vehicle in drive and proceeded to intentionally and deliberately accelerate while still holding onto [Hermans's] arm." Hermans's narrative further states,

> I believed that my life was in [e]minent danger due to the fact that Smith was intentionally driving away in an aggressive manner with me hanging half way out of the car and Smith still grabbing my arm. I then reached around the side window and discharged two shots from my duty weapon and aimed it at Smith in an attempt to free me from the car and save my own life. After the second shot Smith immediately swerved in an aggressive manner and I was immediately thrown approx. 5 feet from the vehicle landing on the left side of my body. I did not discharge any further rounds after I was dislodged from smith's grip and vehicle.

Doc. Ent. 24-7 at 2.

According to Smith, he "was the operator of a running motor vehicle sitting at a stop sign at a full stop at the intersection of Chamberlain and Edison streets in the City of Pontiac, Michigan on the date of July 26, 2004 at approximately 6:30 p.m.[,]" and "Hermans was the lone occupant of a City of Pontiac Police Cruiser which he maneuvered into a position to block the

unhindered forward progress of the vehicle being driven by the plaintiff sitting at the stop sign." Doc. Ent. 1 at 2 ¶¶ 8-9.[7]

On July 27, 2004, an article titled, "Officer dragged by car, suspect sought" and authored by Al Elvin appeared in *The Oakland Press*. Doc. Ent. 37 at 3. In response, Smith wrote a letter to Elvin, in which Smith claims that Christine Douglas placed a call to 911 while Smith and his estranged wife, Traci Powell, were having an argument at their home on Chamberlain. Smith was on parole and had four (4) months left until discharge.[8] He left the house and got into his truck. At the intersection of Edison and Chamberlain, Smith noticed a police vehicle driving toward him. Suddenly, the vehicle pulled near the middle of the intersection. Hermans jumped out of the vehicle with his firearm drawn and came toward the truck. Hermans placed the firearm to Smith's head and stated, "Get Outta The Truck or I'll Shoot!" Smith tried to reason with Hermans, but Hermans repeated the threat. Hermans grabbed Smith's arm and "attempted to pull [Smith] through the window of [the] truck." Hermans discharged a shot from his gun which ended up in the truck's sun visor. Smith hit the gas to escape. As he drove away, Hermans again discharged his firearm, and it shattered the passenger window. Hermans discharged more shots as Smith got further away, one of which hit the driver window. Doc. Ent.

---

[7]Dispatch data from July 26, 2004, at 6:27 p.m. - July 27, 2004, at 12:12 a.m. has been filed. Doc. Ent. 24-8.

[8]On September 3, 1998, Smith was sentenced for violations of unlawfully driving away an automobile (§ 750.413); police officer - fleeing - third degree (§ 750.479A3); assault with dangerous weapon (felonious assault) (§ 750.82); malicious destruction of fire or police property (§ 750.377B); and police officer, resisting & obstructing (§ 750.479-B). On September 17, 1997, he was sentenced for a violation of Police Officer-Fleeing/VehicleCD/2nd Of (§ 257.602a(3)). On August 5, 1997, he was sentenced for a violation of Rec. Stolen Property Over $100 (§ 750.535-A). *See* www.michigan.gov/corrections, "Offender Search". *See also* Doc. Ent. 24-4 at 18-19.

37 at 4-5. According to Smith, "[t]here [were] three bullet holes in his truck from this officer-one in the cab window-one in the sun visor-one that went through the passenger side window." Doc. Ent. 37 at 6 ¶ 4.

Smith "was forced to abandon his vehicle a short distance from the scene of the incident from fear that additional police would come gunning for him under an accusation of assaulting one of their own in an incident involving gunfire although the only life being threatened was his very own life." Doc. Ent. 1 at 3 ¶ 15. He also states that "as a result of the unlawful stop and actions of defendant Hermans, plaintiff eventually was charged with criminal offenses growing out of his deathly fearful responses to having his life threatened and being shot at several times by an openly hostile police officer for reasons unknown to the plaintiff." He further claims he "was forced to become a fugitive because of his fear of being placed under the custody of his persecutors due to a consequent allegation of violation of parole stemming from the unfounded police contact." Doc. Ent. 1 at 5.[9]

On September 13, 2004, a complaint was filed against Smith for (I) a violation of **Mich. Comp. Laws § 750.479a ("Failure to obey directions of police or conservation officer; other offenses")** and (2) a violation of **Mich. Comp. Laws § 750.81d ("Assaulting, battering, wounding, resisting, obstructing, opposing, or endangering a person performing his or her duties; other offenses; running of term of imprisonment")**. The complainant was Ofc. Hermans, and the complaining witness was D/Sgt. Wundrach. Doc. Ent. 24-3 at 1-2 (Case No.

---

[9]Defendants contend that Smith "successfully eluded Defendant Hermans' efforts to detain him and indeed fled the State of Michigan." Doc. Ent. 24 at 1 ¶ 2. Defendants further state that "[p]laintiff was apprehended, extradited back to the State of Michigan wherein he was prosecuted in Oakland County Circuit Court by the Oakland County Prosecutor." Doc. Ent. 24 at 2 ¶ 4.

04-49668SC).  As to the first count, Wundrach alleged that Smith wilfully failed to obey

Hermans's direction to stop his (Smith's) motor vehicle by trying to flee or elude Hermans.

Doc. Ent. 24-3 at 1.

On January 12, 2005, Smith was bound over to Oakland County Circuit Court.  Doc. Ent.

24-3 at 3 (Case No. 2005-200235-FH).  He pled guilty on January 21, 2005.  Doc. Ent. 24 ¶ 8,

24-4.  During this proceeding, Judge Rudy J. Nichols explained that plaintiff might be sentenced

to life on the second degree fleeing charge and fifteen (15) years under the second count.  Doc.

Ent. 24-4 at 9.  The following exchange took place between Judge Nichols and Smith:

> THE COURT: Were you given a sign to stop or pull over by a police officer?
> DEFENDANT SMITH: Yes.
> THE COURT: Did you know he or she was a police officer?
> DEFENDANT SMITH: Yes.
> THE COURT: As far as you know, they–he was acting in the lawful performance
> of his duties?
> DEFENDANT SMITH: Yes.
> THE COURT: And, did you fail to bring–willfully fail to bring your vehicle to a
> stop in a speed mile per hour zone of 35 miles per hour or less?
> DEFENDANT SMITH: Yes.
> . . .
> THE COURT: Did you resist the officer in some way?
> DEFENDANT SMITH: Yes.
> THE COURT: What did you do?
> DEFENDANT SMITH: I drove away.
> THE COURT: What did you do?
> DEFENDANT SMITH: I drove away with the police officer attached to the vehicle.
> THE COURT: And, you caused the police officer to be injured, is that correct?
> DEFENDANT SMITH: Yes.

Doc. Ent. 24-4 at 17-18.

During the February 18, 2005, video sentencing hearing, the following exchange took

place between Judge Nichols and Smith:

> THE COURT: Anything you want to say?

THE DEFENDANT: Yeah, I have a lot to say, I mean, I think that's kind of outrageous and the years he's trying to give me. . . .

THE DEFENDANT: What I'm saying I would like to withdraw this plea.

THE COURT: Why do you want to withdraw the plea:

THE DEFENDANT: I don't believe it's right because half of that stuff I didn't do, I feared for my life.

THE COURT: Why did you tell me you did it when you entered the plea?

THE DEFENDANT: I was forced into it.

THE COURT: You were forced into the plea?

THE DEFENDANT: Yeah.

THE COURT: I made you do it, huh? Mr. McGinnis made you do it, the prosecutor made you do it?

THE DEFENDANT: Yeah, well you all basically said you all were going to stay at the low end but you didn't stay at the low end.

THE COURT: So I didn't stay at the low end?

THE DEFENDANT: No.

THE COURT: And said I'll do it–I'll stay within the guidelines as I calculated?

THE DEFENDANT: (indiscernible).

THE COURT: Right. And so you were forced into the plea?

THE DEFENDANT: Yeah.

THE COURT: Okay. Anything else you want to say?

THE DEFENDANT: No.

Doc. Ent. 24-5 at 5-6. Smith was sentenced to 6 (six) to 25 (twenty-five) years for the violation of Mich. Comp. Laws § 750.479a(4)(a) and 6 (six) to 15 (fifteen) years for the violation of Mich. Comp. Laws § 750.81d(2). Doc. Ent. 24-5 at 6. These charges are described as "Police Officer - Fleeing - Second Degree" and "Police Officer - Assault/Resist/Obstruct Causing Injury." *See* www.michigan.gov/corrections, "Offender Search." Smith's sentence was enhanced pursuant to Mich. Comp. Laws § 769.12.[10] The sentences were to be served consecutively to the parole violation. Doc. Ent. 24 ¶ 9; 24-5 at 6. *See also* www.oakgov.com, "Court Explorer", Case No. 2005-200235-FH. On September 6, 2005, the Michigan Court of

---

[10]Section 769.12 is titled, "[p]unishment for subsequent felony of person convicted of 3 or more felonies; sentence for term of years as indeterminate sentence; restrictions upon use of conviction to enhance sentence; eligibility for parole; imposition of consecutive sentence for subsequent felony[.]"

Appeals denied Smith's delayed application for leave to appeal "for lack of merit in the grounds presented." Doc. Ent. 24-6.

2. **Many of plaintiff's claims against Hermans and the City of Pontiac are grounded in the Fourth and Fourteenth Amendments.**

In his preliminary statement, plaintiff seeks damages pursuant to 42 U.S.C. §§ 1981, 1983 and 1985 for "unlawful seizure and detention, excessive use of force, racial discrimination, conspiracy to conceal civil rights violations, and violation[s] of the [E]qual [P]rotection and [D]ue [P]rocess [C]lauses of the Fifth and Fourteenth Amendments to the United Stats Constitution." In addition, plaintiff alleges "the torts of Attempted Murder, negligence and unconstitutional policies of 'Racial Profiling.'" Doc. Ent. 1 at 1.

The misuse of force, unlawful seizure and detention, and attempted murder allegations appear to be brought against defendant Hermans, and the denial of due process and equal protection allegation appears to be brought against defendant Hermans and defendant City of Pontiac. Doc. Ent. 1 at 3-4 ¶¶ 18-22, 23. Specifically, plaintiff contends:

> Defendant Hermans had no lawful cause or justification to unholster his service pistol and fire three shots while attempting to unlawfully detain the plaintiff. His actions resulted in extreme mental and emotional distress to the plaintiff as well as wanton property damage[.]

> Defendant Hermans had no probable cause or justification for detaining the Plaintiff.

> Plaintiff had committed no crime nor any infraction which would make him liable for seizure and/or detention by police.

> Defendant Hermans took constructive custody of plaintiff by blocking the plaintiff's vehicle and actual custody by physically grabbing and holding onto the plaintiff's arm in an attempt to physically drag the plaintiff through the open window of the plaintiff's vehicle while the vehicle's gears w[ere] still in the "Drive" position.

Defendant was without lawful authority to unholster his service pistol and fire shots while threatening the plaintiff as the plaintiff WAS NOT a fleeing felon nor identified as the person suspected of having committed a felony nor did defend[ant] Hermans have probable cause to detain or arrest the plaintiff.

Plaintiff, an African-American citizen was innocently sitting at a stop sign in his vehicle when a white police officer, acting in a malicious manner consistent with normal practices of a vast majority of Oakland County law enforcement officials, determined that he would single-handedly bring down a black man in a manner in which no white citizen would have been treated under identical circumstances.

Doc. Ent. 1 at 3-4 ¶¶ 18-23.

Plaintiff seeks compensatory damages from Hermans "for his violations of the plaintiff's rights, assault of the plaintiff, damage to property in the possession of the plaintiff, consequent legal and administrative matters plaintiff was suffered to experience, and mental and emotional anguish and suffering sustained as a result of defendant Hermans' unconscionable, unconstitutional, and illegal acts."  Doc. Ent. 1 at 6 ¶ A1.  Plaintiff seeks compensatory damages from the City of Pontiac "for the continuing accepted custom, habit, and routine of its policy to be especia[l]ly harsh and condemning in its policies and treatments of African-American citizens coming under the attention of its law enforcement officers."  Doc. Ent. 1 at 6 ¶ A3.

**3.       The parties dispute whether *Heck v. Humphrey* bars the relief plaintiff seeks.**

**a.**       Defendants argue that plaintiff's case is "barred by the *Heck v Humphrey* doctrine as any judgment for Plaintiff would necessarily invalidate a state Court conviction[.]" Doc. Ent. 24 at 5. In his complaint, plaintiff contends that "[a]fter blocking the plaintiff's vehicle, defendant Hermans jumped from his police cruiser brandishing his drawn service pistol as he rushed to the driver's door of the plaintiff's vehicle yelling for the plaintiff to turn his vehicle off and exit the vehicle or be shot."  Doc. Ent. 1 at 2 ¶ 10.  Plaintiff alleges that "[w]hile continuing his threats to shoot the plaintiff, defendant Hermans reached his arm through the open driver's door window

13

of the plaintiff's vehicle and grabbed the plaintiff by the arm and proceeded to attempt to drag the plaintiff from the vehicle through the open window."  Doc. Ent. 1 ¶ 11.  Plaintiff further alleges that "[b]eing unable to drag the plaintiff through the open window, defendant Hermans fired off two shots from his service pistol, shattering the passenger door window of the plaintiff's vehicle."  Doc. Ent. 1 ¶ 12.  Plaintiff then took his foot off of the brake pedal and placed it onto the accelerator.  Doc. Ent. 1 at 3 ¶ 13.  Hermans "dropped to the ground and took a shot at the plaintiff's vehicle as the plaintiff drove away, shattering the rear cab window of the plaintiff's vehicle, a white pick-up truck."  Doc. Ent. 1 at 3 ¶ 14.

Defendants contend that plaintiff's allegations, if true, "would tend to imply the invalidity of the State Court conviction."  According to defendants, "the facts in [¶¶ 11 and 12] deviate and would be critical to Plaintiff's § 1983 action to survive.  These specific facts, if proven to the trier of fact's satisfaction would support the basis of any civil judgment favoring Plaintiff and would therefore imply the invalidity of the State Court conviction."  Furthermore, defendants maintain, "[t]here is no need for abstention as there is no indication that Plaintiff's conviction is subject to pending challenge nor that the Plaintiff is taking any action to explore the possibility of challenge at this time."  Doc. Ent. 24 at 13.

**b.**    Plaintiff responds that he "was never charged with any offense related to the 911 call for which Defendant Chad Hermans seized an[d] assaulted the Plaintiff[;]" "Defendant Hermans' use of excessive force during his unconstitutional detention of Plaintiff justified Plaintiff's deathly fearful reactions[;]" "[t]he felony charges resulting from Defendant Hermans' unconstitutional seizure and assault of Plaintiff accrued subsequent to the facts and issues relevant to Plaintiff's causes of action[;]" "[p]laintiff's prosecution did not result from the

unconstitutional seizure and assault forming the basis of Plaintiff's civil rights complaint." Doc. Ent. 37 at 1 ¶¶ 1-4. Furthermore, plaintiff responds that his "action has no relation to the subsequent separate and independent charges[.]" Doc. Ent. 37 at 2 ¶ 14.

**c.** Defendants reply that their motion for summary judgment "seeks its relief exclusively on the theory presented in the *Heck v[.] Humphrey* doctrine." Doc. Ent. 38 at 2. Citing Smith's January 21, 2005, plea statements before Oakland County Circuit Court Judge Nichols, defendants contend that plaintiff's response "offers no explanation as to how his lawsuit is not inextricably intertwined with [plaintiff's] admitted facts." Doc. Ent. 38 at 2-3, Doc. Ent. 24-4.

Referring to plaintiff's complaint and letter to Elvin,[11] defendants suspect that plaintiff "justified his refusal to stop when commanded by the Police Officer because the Police Officer commanded him to stop upon pain of being shot." Defendants contend that Hermans "did not direct Plaintiff to stop so that the Officer could shoot him." Doc. Ent. 38 at 3.

Defendants maintain that "[e]ven under Plaintiff's version of the facts, there was no shooting until after Plaintiff refused to obey the Officer's commands to stop the vehicle and get out of the car." Defendants also maintain that there appears to be no dispute that "the gunshots issued by [Hermans] occurred at a time when Plaintiff was driving away with [Hermans] engaged in a physical struggle with the Plaintiff through the driver's window of the vehicle." Doc. Ent. 38 at 3.

---

[11]In his complaint, plaintiff alleges that Hermans "yell[ed] for the plaintiff to turn his vehicle off and exit the vehicle or be shot[,]" and threatened to shoot plaintiff. Doc. Ent. 1 at 2 ¶¶ 10, 11. Also, in the letter to Elvin, plaintiff alleges that Hermans stated, "Get Outta The Truck or I'll Shoot!" Doc. Ent. 37 at 4-6.

Defendants acknowledge that "one interpretation of Plaintiff's narrative could suggest that the vehicle had been stationary when the Officer fired his first shot." However, they contend, "it is very difficult to see the demarcation between Plaintiff's plea of guilty to Count I and Count II of the charges brought against him[] and the federal law claims in the Complaint." Doc. Ent. 38 at 3. For example, defendants contend that plaintiff has not alleged that "he was the victim of excessive force after he had been arrested and subdued," in which case "any guilty plea to a resisting and obstructing charge would have no *Heck v[.] Humphrey* overlap." Defendants conclude that "[t]he allegations upon which Plaintiff brings the § 1983 claim (as separate and distinct from the state law claims) [are] inextricably intertwined with his guilty pleas and state court conviction." Doc. Ent. 38 at 4.

### 4. Any claim challenging an element of Mich. Comp. Laws §§ 750.479a(4)(a) and/or 750.81d(2) is barred by *Heck*.

It has been explained that Mich. Comp. Laws §§ 750.479a and 750.81d "proscribe different conduct and contain separate elements. The first applies only to those who use motor vehicles to flee police. The second is more general and applies to defendant's refusal to obey a verbal order to stop." *People v. Folden*, No. 255719, 2005 WL 2237768, *4 (Sept. 15, 2005).

### a. Mich. Comp. Laws § 750.479a, which concerns the failure to obey a police or conservation officer's directions, provides in part that "[a] driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, *acting in the lawful performance* of his or her duty, directing the driver to bring his or her motor vehicle to a stop *shall not willfully fail to obey* that direction by increasing the speed of the vehicle, extinguishing the lights of the vehicle, or otherwise attempting to flee or elude the police or conservation officer. This subsection does not apply unless the police or

conservation officer giving the signal is in uniform and the officer's vehicle is identified as an official police or department of natural resources vehicle." Mich. Comp. Laws § 750.479a(1) (emphasis added).[12] Plaintiff was convicted of the subsection which provides: "[e]xcept as provided in subsection (5), an individual who violates subsection (1) is guilty of second-degree fleeing and eluding, a felony punishable by imprisonment for not more than 10 years or a fine of not more than $10,000.00, or both, if 1 or more of the following circumstances apply: (a) The violation results in serious impairment of a body function of an individual." Mich. Comp. Laws § 750.479a(4)(a).[13]

Section 750.479a does not make use of the word "arrest" and only makes use of the word "lawful" as set forth above in Section 750.479a(1). Mich. Comp. Laws § 750.479a, which originally became effective on March 10, 1967, has been amended four times. The original text of this statute contained the words "lawful arrest". The first amendment, effective March 30, 1989, contained the words "lawful performance" in Section 750.479a(1) and "lawful arrest" in Section 750.479a(3). The second and third amendments, effective June 1, 1997, and October 1, 1999, contained the words "lawful performance" in Section 750.479a(1) and "lawful arrest" in Section 750.479a(6). However, the fourth amendment, effective July 15, 2002, did not contain the word "arrest," only "lawful performance" in Section 750.479a(1). *See People v. Green*, 260 Mich. App. 710, 715-717, 680 N.W.2d 477, 481-482 (2004); Mich. Comp. Laws § 750.479a, Historical and Statutory Notes & Credit(s).

---

[12]At the plea hearing, plaintiff agreed that "[a]s far as [he] kn[e]w, [Hermans] was acting in the lawful performance of his duties[.]"

[13]*See* www.michigan.gov/corrections, "Offender Search."

The events at issue in this case took place on July 26, 2004, and the state criminal complaint against plaintiff was filed on September 13, 2004. Therefore, the July 15, 2002, version of Section 750.479a applies to the case at bar. Accordingly, an arrest is not an element of Section 750.479a(4)(a).

**b.    Mich. Comp. Laws § 750.81d, in part concerns "[a]ssaulting, battering, wounding, resisting, obstructing, opposing, or endangering a person performing his or her duties[.]"**

Smith was convicted of Subsection § 750.81d(2),[14] which provides that "[a]n individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a bodily injury requiring medical attention or medical care to that person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both."

Section 750.81d does not use the word "arrest" and only uses the word "lawful" in its explanation of the word "obstruct." Mich. Comp. Laws § 750.81d(7)(a).[15] Mich. Comp. Laws § 750.81d was enacted on May 9, 2002. *People v. Ventura*, 262 Mich.App. 370, 374-375, 686 N.W.2d 748 (2004).[16] Since then, the Michigan Court of Appeals has stated, "[a] person may not use force to resist an arrest made by one he knows or has reason to know is performing his duties regardless of whether the arrest is illegal when charged pursuant to MCL 750.81d. . . . [Mich. Comp. Laws §] 750.81d does not require a showing that defendant's arrest was lawful[.]"

---

[14]*See* www.michigan.gov/corrections, "Offender Search."

[15]"'Obstruct' includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." Mich. Comp. Laws § 750.81d(7)(a).

[16]It was amended effective December 29, 2006, adding subsection 750.81d(7)(b)(x). Mich. Comp. Laws § 750.81d, Credit(s).

*Ventura*, 262 Mich.App. at 378, 686 N.W.2d at 752.  *See also People v. Rauch*, No. 263185, 2006 WL 3682754, *3 (Mich. App. Dec. 14, 2006).

**c.**     Here, it is appropriate to consider whether plaintiff's claims could have been raised as a defense to the fleeing or assault/resisting charges, because Smith may be suggesting that he was acting in self-defense as to either of these charges.  For example, plaintiff states that he was "forced to abandon his vehicle a short distance from the scene of the incident from fear that additional police would come gunning for him[,]" he was "forced to become a fugitive because of his fear of being placed under the custody of his persecutors[,]" and his responses were "forced."  Doc. Ent. 1 at 3 ¶ 15; Doc. Ent. 1 at 5.[17]

The express language of Mich. Comp. Laws § 750.479a requires that the subject "shall not *willfully fail to obey* that direction by increasing the speed of the vehicle, extinguishing the lights of the vehicle, or otherwise attempting to flee or elude the police or conservation officer." Mich. Comp. Laws § 750.479a (emphasis added).[18]  To the extent, if at all, plaintiff is claiming that he acted in self-defense with respect to the second degree fleeing charge, Smith could have asserted self-defense as a defense to the charge of Mich. Comp. Laws § 750.479a.

---

[17]This characterization of plaintiff's claim is also suggested by plaintiff's statements in his letter to Elvin.  For example, plaintiff stated that "[t]here were no other [officers] there when this was happening.  It was just Chad Herm[a]ns and myself.  Sgt[.] Wundrach who signed the complaining witness paper in fact lied."  Plaintiff also stated that he "fled from the officer because he threaten[ed] and fired his firearm at me, which forced me to flee for my life."  Plaintiff further stated that he "never had any type of weapon, firearm, blunt object[.]"  Plaintiff also contends that "Douglas made a false report to the 911 dispatcher[;]" and "[T]raci Powell did not call 911."  Perhaps most illustrative are plaintiff's statements that "[t]his is a case of a[n] officer who fowled up and tried to cover it up the best way that he could, with the help of co-workers and other [officers][;]" and "[he is] falsely incarcerated for something that [he] never [did] but avoided being killed by [O]fficer Hermans[.]"  Doc. Ent. 37 at 5-6.

[18]At the plea hearing, plaintiff agreed that he "fail[ed] to bring–willfully fail[ed] to bring [his] vehicle to a stop in a speed mile per hour zone of 35 miles per hour or less[.]"

It is not clear whether Smith could have asserted self-defense as a defense to the charge of Mich. Comp. Laws § 750.81d. The Michigan Court of Appeals has stated: "We find it unnecessary to decide if some form of self-defense to a charge under MCL 750.81d survives the holding in *Ventura*[.] A self-defense claim is generally founded on necessity. Lawful self-defense is not available to a defendant who was the initial aggressor or used excessive force." *People v. Rauch*, No. 263185, 2006 WL 3682754 (Mich. App. Dec. 14, 2006) (citations omitted). "In order to establish lawful self-defense, the circumstances, as they appeared to the defendant, must result in a reasonable belief that the defendant was in danger of death or serious bodily harm. *People v. Shelton*, No. 211826, 1999 WL 33326880, 2 (Mich. App. Dec. 21, 1999) (on appeal as of right from jury conviction of Mich. Comp. Laws §§ 750.81a, 750.82, 740.479, 750.479b) (citing *People v. Green*, 113 Mich. App 699, 704; 318 NW2d 547 (1982)).

In any event, any claim by plaintiff that he is not guilty of the charges to which he pleaded on the basis that he was acting in self-defense is barred by *Heck*. For example, in *Dyer v. Lee*, 488 F.3d 876 (11th Cir. 2007), Dyer "pled no contest to a single charge of resisting with violence, but because of a subsequent parole violation the verdict was changed to guilty[.]" *Dyer*, 488 F.3d at 878. The Court considered whether "*Heck*[] bar[red] a plaintiff's suit under 42 U.S.C. § 1983 for the use of excessive force during her arrest." *Dyer*, 488 F.3d at 877. It concluded that "a successful § 1983 suit would not contradict her underlying conviction, and thus her suit is not *Heck*-barred." *Dyer*, 488 F.3d at 877. In so doing, the Court cited its disagreement with the Fifth Circuit's reasoning that "[b]ecause that resistance formed the basis of the battery charge, the conviction would be negated if the resistance was found to be

justified." *Dyer*, 488 F.3d at 884 n.10 (citing *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996)).

Additionally, in *Cunningham v. Gates*, 312 F.3d 1148 (9th Cir. 2002), the Court stated: "Cunningham's conviction for felony murder required the jury to find that he intentionally provoked the deadly police response, and that he did not act in self-defense. Any civil claim that Cunningham was not the provocateur necessarily fails as a result of the jury verdict." *Cunningham*, 312 F.3d at 1154.[19]

Therefore, a claim by Smith challenging the willfulness of his failure to obey Hermans's directions on the basis that he was acting in self-defense is barred by *Heck*.

## 5.    *Heck* does not bar all of plaintiff's claims.

Taking into consideration the elements of the statutes which form the bases of plaintiff's convictions, the Court must consider whether "a judgment in favor of the plaintiff . . . necessarily impl[ies] the invalidity of his conviction or sentence[?]" *Heck*, 512 U.S. at 487. In other words, may this lawsuit "be construed as seeking a judgment at odds with his conviction or with the

---

[19]*But see Hernandez v. Boles*, 184 F.3d 819, *1 (5th Cir. 1999). In *Hernandez*, plaintiff claimed that "Boles used excessive force while arresting him for public intoxication." *Id.* at *1. Citing *Hudson*, 98 F.3d at 873, the Court stated noted that "Hudson's suit was barred by *Heck*, because any showing that the officer had used unreasonable force would have necessarily implied that Hudson could have prevailed at trial on a theory of self-defense." *Hernandez*, 184 F.3d at *1. The Court also stated that, "[a]s Hudson's new claim would have necessarily implied that he could have prevailed at trial, *Heck* precludes his claim[,]" and "Hernandez has not distinguished his situation from Hudson's." *Id.* at *2. *See also Jennings v. Fetterman*, 197 Fed.Appx. 162 (3d Cir. 2006) ("The District Court reasoned that Jennings' attempted homicide conviction necessarily meant that the jury had rejected Jennings' theory that he had shot at Dawley in self defense. The court further explained that a judgment in favor of Jennings on his excessive force claim would contradict this jury finding and, by logical extension, invalidate the attempted homicide conviction. As Jennings did not demonstrate that this conviction had already been invalidated, we agree with the District Court that Jennings' claims were barred under *Heck*." *Jennings*, 197 Fed.Appx. at 164.

State's calculation of time to be served in accordance with the underlying sentence[?]" *Muhammad*, 540 U.S. at 754-755. As previously noted, the misuse of force, unlawful seizure and detention, and attempted murder allegations appear to be brought against defendant Hermans, and the denial of due process and equal protection allegation appears to be brought against defendant Hermans and defendant City of Pontiac. Doc. Ent. 1 at 3-4 ¶¶ 18-22, 23.[20]

Plaintiff's federal constitutional claims are diverse,[21] such as Fourth Amendment excessive force (¶ 26); Fourth Amendment probable cause and detention (¶ 25); and Fourteenth Amendment Equal Protection (¶ 29). Within the "Claims for Relief," plaintiff claims that "[t]he actions of defendant Hermans in detaining the plaintiff without probable cause was a violation of

_____

[20]The conspiracy claim appears to be brought against Wundrach. First, in the "Facts" section of his complaint, plaintiff alleges that Wundrach "became involved when he entered into collusion with Defendant Hermans and other unknown City officials to cover-up civil rights violations, and excessive use of force by one of his subordinates." Doc. Ent. 1 at 3 ¶ 16. Second, the "Conspiracy" section of the complaint alleges that "[u]pon discovering the facts surrounding the actions of Defendant Hermans, defendant Detective Sergeant Wundrach initiated efforts to ensure that the plaintiff would be placed at complete fault instead of addressing defendant Hermans' violations of the plaintiff's rights and laws of the State of Michigan." Doc. Ent. 1 at 4 ¶ 24. Third, the "Claims for Relief" section of the complaint alleges that "[t]he failure of defendant Detective Sergeant Wundrach to pursue appropriate action and enter into collusion to cover-up the egregious and unlawful conduct of defendant Hermans in a known pattern of racial profiling and disparate treatment of African-Americans by Oakland County Law Enforcement Officials is a violation of 28 U.S.C. §§ 1981 and 1985." Doc. Ent. 1 at 5 ¶ 28.

To be sure, the "Relief Requested" portion of the complaint, in which plaintiff specifically describes his compensatory and punitive damages, seeks joint and several liability from Hermans and Wundrach "for conspiring to cover-up the unlawful actions of defendant Hermans and subject plaintiff to punishment unlike that which would have been directed at any white person under similar circumstances." Doc. Ent. 1 at 6 ¶ A2.

Nonetheless, I still interpret plaintiff's conspiracy claim as limited to Wundrach. As such, the conspiracy claim is not addressed by this report and recommendation, because it does not appear that Wundrach is properly before this Court.

[21]Plaintiff also sets forth a state law assault claim for relief, alleging that "[t]he actions of defendant Hermans in using deadly force and physical force without need or provocation constituted the tort of assault and felonious assault under the laws of the State of Michigan. Doc. Ent. 1 at 5 ¶ 27.

the Fourth Amendment protection against unlawful search and seizure[.]" Doc. Ent. 1 at 4 ¶ 25. Plaintiff further claims that "[t]he actions of defendant Hermans in physically grabbing ahold of the plaintiff's person and firing shots while threatening the plaintiff without need or provocation were done maliciously and constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution." Doc. Ent. 1 at 4 ¶ 26. Also within the "Claims for Relief," apparently as to the City of Pontiac, plaintiff alleges that "[t]he accepted practice of Law Enforcement Officials to treat African-Americans differently than whites in Pontiac, Michigan and the confines of Oakland County, Michigan, by the City of Pontiac and Oakland County constitutes deliberate indifference where indulgence of the known pattern goes on unpunished." Doc. Ent. 1 at 5 ¶ 29.

For the reasons set forth below, the Court should conclude that *Heck* does not bar all of plaintiff's claims against defendants City of Pontiac and Hermans.

a.    **Fourth Amendment excessive force:** Plaintiff claims that "[t]he actions of defendant Hermans in physically grabbing ahold of the plaintiff's person and firing shots while threatening the plaintiff without need or provocation were done maliciously and constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution." Doc. Ent. 1 at 4 ¶ 26. Such a claim is properly analyzed under the Fourth Amendment on the basis that Herman's actions were unreasonable. *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("*all* claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due

23

process' approach."); *Floyd v. City of Detroit*, 518 F.3d 398, 405 (6ᵗʰ Cir. 2008) (quoting *Graham*, 490 U.S. at 395).

A Sixth Circuit decision appears to suggest that the instant plaintiff's excessive force claim would be barred by *Heck*. In *Cummings v. City of Akron*, 418 F.3d 676 (6ᵗʰ Cir. 2005) (Ohio), Cummings "pleaded no contest to a reduced charge of misdemeanor assault on Officer Vaughn, and all other charges against him were dropped." *Cummings*, 418 F.3d at 680. "Ohio's assault statute state[d] that '[n]o person shall *knowingly* cause or attempt to cause physical harm to another,' and '[n]o person shall *recklessly* cause *serious* physical harm to another.'" *Cummings*, 418 F.3d at 686 (citing Ohio Rev.Code § 2903.13(A), (B) (emphasis added)). Plaintiff brought a "civil rights action . . . pursuant to 42 U.S.C. § 1983, alleging violations of Cummings' Fourth Amendment rights to be free from unreasonable seizure and excessive force." *Id*. The Court stated that "success on Cummings' excessive force claim would necessarily imply the invalidity of his state assault conviction[,]" and explained:

> The struggle between Cummings and the officers gave rise to both Cummings' assault conviction and the excessive force claim, and the two are inextricably intertwined. Additionally, Cummings could have raised excessive force as a defense to the assault charge, but instead he chose not to contest the charge.

*Id*. at 682-683. The Court held that "*Heck* bars Cummings' Fourth Amendment excessive force claim from moving forward[.]" *Cummings v. City of Akron*, 418 F.3d 676, 682-683 (6ᵗʰ Cir. 2005) (Ohio).

There appears to be a distinction between *Cummings* and the instant case. To begin, as discussed above, an arrest is not an element of a conviction under Mich. Comp. Laws §§ 750.479a or 750.81d. Furthermore, Ohio law "provides that an arrest is not lawful if the arresting officer uses excessive force." *Swiecicki v. Delgado*, 463 F.3d 489, 494 (6ᵗʰ Cir. 2006)

(citing *White v. Ebie*, 1999 WL 775914, *1 (6th Cir. 1999). The Sixth Circuit has stated that "*White* and the Ohio rule of law on which it relies, then, suggest that Swiecicki's excessive-force claim under § 1983 would have necessarily implied the invalidity of his conviction for resisting arrest[.]" *Swiecicki*, 463 F.3d at 494.

It appears that an arrest in Michigan may be lawful even if excessive force was used. *Hancock v. Horvath*, No. 256583, 2005 WL 3481428, *3 (Mich. App. Dec. 20, 2005). In *Hancock*, plaintiff was to plead to a civil infraction of careless driving; three felony charges, including a charge under Mich. Comp. Laws § 750.479a(2), were to be dismissed. *Hancock*, 2005 WL 3481428, *1. As to plaintiff's argument that the officers used excessive force during the arrest, the court noted that "the deputies' employed an objectively reasonable amount of force during plaintiff's arrest, so the deputies are entitled to governmental immunity and summary disposition on plaintiff's excessive force claim." *Id.* at *3. *But see People v. Baker*, 127 Mich. App. 297, 299, 338 N.W.2d 391, 392 (1983) (Baker's claim that "the arrest was unlawful in that the degree of force used by the officer was excessive[,]" would have constituted a complete defense to a charge pursuant to § 750.479).

Nonetheless, post-*Cummings* cases from this district direct a conclusion that plaintiff's excessive force claim should be barred. For example, in *Bobo v. City of Pontiac*, No. 08-CV-10265-DT, 2008 WL 1882705 (E.D. Mich. Apr. 24, 2008) (Cleland, J.), Bobo had apparently pleaded guilty to a Pontiac Ordinance which provided that "[n]o person shall knowingly or willfully obstruct, hinder, resist or oppose any police officer or fire-fighter while discharging or attempting to discharge his duties." *Bobo*, 2007 WL 1882705, *3. Plaintiff alleged "four constitutional violations: (1) arrest without probable cause, (2) unreasonable search and seizure,

(3) false imprisonment and (4) deprivation of liberty without due process." *Id*. at *1. Citing the Michigan Court of Appeals' decision in *Ventura*, particularly its comparison of Mich. Comp. Laws §§ 750.81d and 750.479, Judge Cleland noted, "[t]he key question in this case is the scope of Plaintiff's guilty plea and whether his instant claim touches upon the necessary elements of his state court conviction." *Id*. at *4. As to the unreasonable search and seizure claim, Judge Cleland stated:

> . . . the court is not persuaded that the implied lawfulness of Cosby's duties necessarily entails all of the constitutional violations generally alleged in Plaintiff's complaint. *The elements of Plaintiff's conviction for resisting and obstruction do not include, for example, the degree of force that Cosby used while or, indeed, after effectuating arrest.* Whatever the final factual contours of Plaintiff's federal claims, the court concludes that at least some of them do "not 'necessarily imply the invalidity of his conviction' for resisting arrest." *Id*. at 504. *Heck* therefore does not preclude Plaintiff's claim of unreasonable seizure or excessive force under the Fourth Amendment.

*Id*. at *5 (emphasis added).

In *Ryan v. Hazel Park*, No. 05-74815, 2007 WL 1174906 (E.D. Mich. Apr. 20, 2007) (Battani, J.), plaintiff was "convicted by a jury of Third-Degree Fleeing and Eluding, and was also found guilty of Assault/Resisting an Officer in violation of Mich. Comp. Laws Ann. § 750.81d(1)." *Ryan*, 2007 WL 1174906 at *2. In part, plaintiff "alleg[ed] that the officers violated her Fourth Amendment right to be free from unreasonable searches and seizures by utilizing excessive force in procuring her arrest." *Id*. at *1. Plaintiff alleged that "the defendant officers violated her Fourth Amendment right to be free from an unreasonable search and seizure, committed assault and battery, and were grossly negligent in their actions." *Id*. at *3. Citing *Heck* and *Cummings*, Judge Battani concluded that plaintiff's excessive force claim was barred by *Heck*:

This case is similar to the *Cummings* case because "[t]he struggle between [Ryan] and the officers gave rise to both" Ryan's resisting arrest/assault conviction and the excessive force claim, and Ryan could have used the alleged excessive force as a defense to the charge. *Id.* She does not claim to have done so, or if she did, was unsuccessful. Plaintiff does not allege that Defendants used any unnecessary force after she was handcuffed. Therefore, under the *Heck* doctrine, Ryan's conviction for assaulting/ resisting/ obstructing a police officer is inextricably intertwined with her excessive force claim because her claim arises from Defendants' use of force to subdue her.

*Id.* at *5.[22]

In *Hill v. Dalbec*, 2007 WL 4181654 (E.D. Mich. 2007) (Zatkoff, J.), plaintiff had been convicted under Mich. Comp. Laws § 750.81d(1). The Court stated that "[j]ust as in *Ryan*, where the plaintiff violated the same statute as Plaintiff in this case, Plaintiff's excessive force claim, if successful, would necessarily imply the invalidity of his conviction for resisting arrest because it would negate the legality of the arrest." *Hill*, 2007 WL 4181654, *3. The Court further stated, "[a]s in both *Cummings* and *Ryan*, the struggle between Plaintiff and Defendants gave rise to both his conviction for resisting arrest and the excessive force claim, and the two are inextricably intertwined." *Id.*

In *Houston v. Buffa*, No. 06-CV-10140-DT, 2007 WL 1005715 (E.D. Mich. Mar. 30, 2007) (Cleland, J.), plaintiff was "convicted of Interfering with Police, in violation of City of Ypsilanti Ordinance No. 74-32." *Houston*, 2007 WL 1005715, *1. In Houston's 42 U.S.C. § 1983 action, he alleged "claims for excessive force and, additionally, for false arrest and false imprisonment arising out of events which occurred on January 27, 2003 at the Club Devine in Ypsilanti, Michigan." *Id.* With respect to plaintiff's excessive force claim, this Court noted that

---

[22]Judge Battani went on to state that, "[e]ven if Plaintiff's excessive force claim was not barred by her conviction, the defendant officers are entitled to qualified immunity." *Ryan*, 2007 WL 1174906, *5.

"courts have consistently allowed § 1983 claims arising out of allegations that the excessive force occurred *after the arrest*." *Id*. at *9 (emphasis added) (referencing *Schreiber v. Moe*, No. 1:05-CV-91, 2006 WL 2331175 (W.D. Mich. Aug. 10, 2006) (Bell, J.) and *Potvin v. City of Westland Police Dept.*, No. 05-70291, 2006 WL 3247116 (E.D. Mich. Nov. 7, 2006) (Borman, J.)).  Judge Cleland also noted that "[c]ourts also allow excessive force claims for events *occurring in effectuating the arrest* where the lawfulness of the arrest was not an element to the underlying criminal conviction." *Houston*, 2007 WL 1005715 at *9 (emphasis added) (referencing *Donovan v. Thames*, 105 F.3d 291 (6th Cir. 1997) (Ky.)[23]).  Likening Houston's case to *Cummings*, the Court found that "the excessive force claim is 'inextricably intertwined' with the underlying conviction and barred by *Heck* because its success would necessarily imply the invalidity of the underlying assault conviction." *Id*. at *10-*11 (citing *Cummings*, 418 F.3d at 682, and referencing *Schreiber*, 445 F.Supp.2d at 814); see also Mitchell v. City of Ypsilanti, 2007 WL 2259117, *4 (E.D. Mich. Aug. 3, 2007) (Battani, J.) ("Because the jury found that Officer Yuchasz was carrying out lawful duties, it necessarily found that he was executing a lawful arrest. It did not necessarily find that he did not engage in the use of an unreasonable amount of force after arresting Plaintiff.").

However, it is worth noting that a conclusion that Smith's Fourth Amendment excessive force claim is not barred by *Heck* would pay tribute to *Heck*'s use of the term, "necessarily."  In *Nelson v. Campbell*, 541 U.S. 637 (2004), the Supreme Court considered "whether § 1983 is an appropriate vehicle for petitioner's Eighth Amendment claim seeking a temporary stay and

---

[23]"Donovan was tried by the Kenton County District Court and convicted of resisting arrest and the drug-related charges.  However, Donovan was acquitted of the charge of domestic violence." *Donovan*, 105 F.3d at 293.

permanent injunctive relief." *Nelson*, 541 U.S. at 639. Noting that petitioner had "been careful . . . to assert that the cut-down, as well as the wardens' refusal to provide reliable information regarding the cut-down protocol, are *wholly unnecessary* to gaining venous access[,]" Justice O'Connor stated, "we were careful in *Heck* to stress the importance of the term, 'necessarily.'" *Nelson*, 541 U.S. at 645-647. Specifically referencing footnote 7 in *Heck*, the Supreme Court stated, "[t]o hold otherwise would have cut off potentially valid damages actions as to which a plaintiff might never obtain favorable termination–suits that could otherwise have gone forward had the plaintiff not been convicted." *Id.* at 647. In fact, Judge Sutton emphasized *Heck*'s use of the word "necessarily" in his concurring and dissenting opinion in *Swiecicki*. *Swiecicki*, 463 F.3d at 504 (Sutton, J., concurring in part and dissenting in part) ("As a matter of sheer logic, one may bring a successful excessive-force claim without having to establish that the resisting-arrest charge was unlawful: An officer could legitimately arrest a suspect but use excessive force in bringing the suspect to the station. And as a matter of state-court precedent, Ohio law permits exactly that type of excessive-force claim, namely one that follows a lawful arrest.").

Furthermore, a conclusion that the instant plaintiff's Fourth Amendment excessive force claim is not barred by *Heck* would be consistent with cases from other circuits regarding excessive force claims following convictions on charges of resisting, assault, fleeing and eluding, etc. *Nelson v. Jashurek*, 109 F.3d 142, 145-146 (3d Cir. 1997) ("the fact that Jashurek was justified in using 'substantial force' to arrest Nelson does not mean that he was justified in using an excessive amount of force and thus does not mean that his actions in effectuating the arrest necessarily were objectively reasonable. In short, there undoubtedly could be 'substantial

29

force' which is objectively reasonable and 'substantial force' which is excessive and unreasonable."); *Swangin v. California State Police*, No. 98-15458, 1999 WL 97361, *2 (9th Cir. Feb. 25, 1999) ("[a] jury presented with Swangin's § 1983 claim could certainly conclude that, contrary to Swangin's statement, he had assaulted Jose but that Jose had then used excessive force against him."); *Wells v. Cramer*, 158 Fed.Appx. 203, **1-**2 (11th Cir. 2005) ("[t]o the extent that Wells's complaint alleged an excessive use of force after he was arrested, restrained and posed no threat to the defendant officers, his section 1983 action, if successful, would not necessarily imply the invalidity of his underlying convictions [for aggravated assault, including assault on law enforcement officers, aggravated fleeing and eluding, and resisting arrest without violence] and is not *Heck*-barred."); *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 764 (7th Cir. Apr. 10, 2008) ("[t]he fact that Hardrick 'struggled while being handcuffed' at one point in time does not preclude the possibility that at another point in time, Hardrick was 'peaceably waiting to be handcuffed.'").

Here, plaintiff's claim of excessive force relates to the manner in which his stop was effected. Nonetheless, in the context of a case wherein the plaintiff had pleaded guilty to a violation of Mich. Comp. Laws § 750.81d(1), this Court has stated "[i]n contrast to those appropriate cases [discussed in *Heck*, 512 U.S. at 487 n.7], Plaintiff's claim would directly negate a necessary element of his state court conviction by undermining the legality of his arrest. Thus, Plaintiff's claim is directly within the scope of the Supreme Court's holding in *Heck*." *Hill*, 2007 WL 4181654, *3. In light of the aforementioned Sixth Circuit case law and case law from this Court, the Court should conclude that plaintiff's Fourth Amendment excessive force claim is barred by *Heck*.

**b.**     **Fourth Amendment probable cause:**  Plaintiff claims that "[t]he actions of defendant Hermans in detaining the plaintiff without probable cause was a violation of the Fourth Amendment protection against unlawful search and seizure[.]"  Doc. Ent. 1 at 4 ¶ 25.  Plaintiff's claim that the initial stop was made without probable cause is not barred by *Heck*, because this claim is based upon events regarding which plaintiff was not charged.

In *Heck*, the Supreme Court stated:

> An example of . . . a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful-would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful arrest*. . . . He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures.  In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted.  Regardless of the state law concerning res judicata, . . . the § 1983 action will not lie.

*Heck*, 512 U.S. at 486-487 n.6.  This footnote was specifically referenced in *Cummings*, wherein the Court concluded that "*Heck* [did not bar] Cummings' unreasonable seizure and unlawful entry claims."  *Id*. at 683. The Court noted that "Cummings was convicted of assault, not resisting arrest, and the lawfulness of the arrest is not an element of the crime of his conviction. Indeed, as discussed above, the legality of the arrest is irrelevant to Cummings' crime of conviction."  *Cummings*, 418 F.3d at 684.

Further support for this conclusion is found in *Montgomery v. De Simone*, 159 F.3d 120 (3d Cir. 1998).  In *Montgomery*, plaintiff's convictions for speeding, drunk driving, and refusing to take a breathalyzer test were reversed.  *Montgomery*, 159 F.3d at 123.  Among the claims in her § 1983 suit were malicious prosecution, false arrest and false imprisonment.  *Id*.  The Court considered "when the two-year limitations period began to run on Montgomery's section 1983

false arrest and false imprisonment claims." *Id*. at 126. Citing *Heck*, 512 U.S. at 484, the Third Circuit stated that "[a] claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more." *Montgomery*, 159 F.3d at 126. The Court also noted that Montgomery's "section 1983 false imprisonment claim relate[d] only to her arrest and the few hours she was detained immediately following her arrest." *Id*. After arriving at the conclusion that plaintiff's false arrest and false imprisonment claims were time-barred, the Court noted: "Because a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest, we find that Montgomery's claims for false arrest and false imprisonment are not the type of claims contemplated by the Court in *Heck* which necessarily implicate the validity of a conviction or sentence." *Id*. at 126 n.5. *See also Wallace v. Kato*, 127 S.Ct. 1091, 1100 (2007) ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); *Kucharski v. Leveille*, 526 F.Supp.2d 768, 774 (E.D. Mich. 2007) (Lawson, J.) (interpreting *Wallace*, *Heck* only applies if the plaintiff has actually been convicted.").

Here, plaintiff notes that he "was not charged with any offense relative to the initial detention by Defendant Hermans." Doc. Ent. 1 at 5. In his response to the instant motion, he states that he "was never charged with any offense related to the 911 call for which Defendant Chad Hermans seized an[d] assaulted the Plaintiff." Doc. Ent. 37 at 1 ¶ 1. In other words, plaintiff is alleging that Hermans did not have probable cause to stop plaintiff in the first place or that his complaint is based upon actions which took place prior to his felony charges, Doc. Ent.

37 ¶¶ 3, 4, 14 and 16. In the case at bar, plaintiff's convictions for violations of Mich. Comp.

Laws §§ 750.479a and 750.81d arose from his *reaction* to the initial stop. Therefore, a challenge

to the initial stop does not necessarily imply the invalidity of his convictions.

Because "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of

any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed,

in the absence of some other bar to the suit." *Heck*, 512 U.S. at 487 (internal footnote omitted).

As the Supreme Court footnoted:

> [A] suit for damages attributable to an allegedly unreasonable search may lie even
> if the challenged search produced evidence that was introduced in a state criminal
> trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of
> doctrines like independent source and inevitable discovery, see *Murray v. United
> States*, 487 U.S. 533, 539 (1988), and especially harmless error, see *Arizona v.
> Fulminante*, 499 U.S. 279, 307-308 (1991), such a § 1983 action, even if
> successful, would not *necessarily* imply that the plaintiff's conviction was
> unlawful. In order to recover compensatory damages, however, the § 1983
> plaintiff must prove not only that the search was unlawful, but that it caused him
> actual, compensable injury, see *Memphis Community School. Dist. v. Stachura*,
> 477 U.S. 299, 308 (1986), which, we hold today, does *not* encompass the "injury"
> of being convicted and imprisoned (until his conviction has been overturned).

*Heck*, 512 U.S. at 487 n.7. Here, plaintiff's Fourth Amendment claim challenging the existence

of probable cause to make the initial stop may survive defendant's *Heck* challenge; however, in

the absence of some other bar to this claim, plaintiff will have to prove that the initial stop was

unlawful and that "it caused him actual, compensable injury," for an award of compensatory

damages. *Id.*[24]

---

[24]In addition to his many statements which suggest that his complaint is based upon matters
which occurred before the stop, plaintiff states that "as a result of the unlawful [July 26, 2004] stop
and actions of defendant Hermans, plaintiff eventually was charged with criminal offenses[.]" Doc.
Ent. 1 at 5. This allegation appears in the "addendum" section of plaintiff's complaint and is
therefore not construed as a claim for which plaintiff is seeking relief. To the extent plaintiff is
doing so, he would need to show an injury to recover compensatory damages under § 1983. *Heck*,

**c.**　　**Fourteenth Amendment Equal Protection:**　Plaintiff claims that "[t]he accepted practice of Law Enforcement Officials to treat African-Americans differently than whites in Pontiac, Michigan and the confines of Oakland County, Michigan, by the City of Pontiac and Oakland County constitutes deliberate indifference where indulgence of the known patterns goes on unpunished."　Doc. Ent. 1 at 5 ¶ 29.　It appears that plaintiff intends to bring a Fourteenth Amendment claim on the basis of racial discrimination, racial profiling, and/or disparate treatment.

This claim is barred by *Heck*.　In *Gibson v. Superintendent of NJ Dept. of Law and Public Safety-Division of State Police*, 411 F.3d 427 (3d Cir. 2005), Gibson had been found guilty of two drug-related charges in 1994.　*Gibson*, 411 F.3d at 431.　In 1996, the state court determined that New Jersey troopers "were racially profiling drivers on the New Jersey Turnpike and targeting African-Americans for stops."　*Id*. at 432 (citing *New Jersey v. Soto*, 324 N.J.Super. 66, 734 A.2d 350 (Law. Div. 1996).　Subsequently, his conviction was reversed, "because exculpatory material uncovered in November 2000 tended to show that he was illegally stopped and arrested."　*Gibson*, 411 F.3d at 432.　Among Gibson's Section 1983 claims was a claim that troopers "subjected him to racially selective law enforcement practices in violation of the Equal Protection Clause of the Fourteenth Amendment."　*Gibson*, 411 F.3d at 440-441.　The Court noted that "even though the Fourth Amendment reasonableness standard is not influenced by the subjective intentions of the person making the search or seizure, if a person can demonstrate that he was subjected to selective enforcement in violation of his Equal Protection rights, his conviction will be invalid."　*Gibson*, 411 F.3d at 440-441.　The Court also stated, "[b]ecause a

---

512 U.S. at 487 n.7.

successful claim of selective enforcement under the Fourteenth Amendment Equal Protection Clause would have necessarily invalidated Gibson's conviction [for drug-related offenses], under the *Heck* deferred accrual rule the statute of limitations did not begin to run until his sentence was vacated and this claim is not untimely." *Gibson*, 411 F.3d at 441; *cf. Roberts v. O'Bannon*, 199 Fed.Appx. 711, 713-714 (10th Cir. 2006) ("His Fourteenth Amendment equal-protection claim challenges the validity of his prosecution when another person, whom he claims to be more culpable, was not prosecuted."). *See also Sanders v. Fayetteville City Police Dept.*, 160 Fed.Appx. 542, 543 (8th Cir. 2005) ("Mr. Sanders's . . . claim[] that [his] first arrest resulted from a racially motivated stop without reasonable suspicion, [is] barred by *Heck v. Humphrey*[.]").

A conclusion that plaintiff's racial profiling claim is barred by *Heck* is consistent with at least two cases from the federal courts in this state. *See Burns v. Bauer*, 2005 WL 1705006, *1-*2 (W.D. Mich. July 20, 2005) (Quist, J.) ("Plaintiff maintains that his passenger was wearing his seatbelt, and that officers were using the alleged seatbelt violation as a pretext for 'racial profiling[,]'"and "[p]laintiff's Fourth Amendment claims clearly call into question the validity of his convictions [on drug-related charges]. Therefore, his action is barred under *Heck* until his criminal conviction has been invalidated."); *Allen v. LaPorte*, 2002 WL 1009563, *1 (E.D. Mich. Apr. 16, 2002) (Friedman, J.) ("Plaintiff is actually seeking habeas corpus relief on his racial profiling and *Terry* stop claims, inasmuch as those claims addresses the validity of his arrest and related state criminal proceedings[,]" and "[g]iven that Plaintiff's arrest and/or conviction has not been overturned or declared invalid, his Terry stop and racial profiling claims under § 1983 must be dismissed.").

Without commenting on the merits of plaintiff's racial profiling claim, if the Court disagrees with the conclusion that plaintiff's racial profiling claim is not barred by *Heck*, it should address the claim as discussed in the foregoing section (Section II.D.5.b) on plaintiff's Fourth Amendment probable cause claim. That is, plaintiff's Fourteenth Amendment equal protection claim is not barred by *Heck*, but, in order to receive compensatory damages under § 1983, plaintiff would have to prove that he was racially profiled and show an injury - the paradigm set forth in footnote 7 of *Heck*.

## III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231, American Federation of Teachers, ALF-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length

unless by motion and order such page limit is extended by the Court. The response shall address

specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE


Dated 8/28/08


| The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 28, 2008. |
| --- |
| s/Eddrey Butts |
| Case Manager |